NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                      :
LAWRENCE MATHIES,                     :
                                      :   Civil Action No. 12-6838 (RMB)
            Petitioner,               :
                                      :
      v.                              :            **OPINION**
                                      :
FEDERAL BUREAU OF PRISONS,            :
                                      :
            Respondent.               :
_____:

**BUMB, District Judge:**

   This matter comes before the Court upon Petitioner's submission of his filing fee, which triggered restoration of this matter to the Court's active docket.  See Docket Entry No. 5.

   Petitioner is a federal prisoner currently confined at the F.C.I. Fort Dix, Fort Dix, New Jersey.  Known as "Poochie," Petitioner was a member "of a racketeering enterprise known as the 'Bryant Boys' [that operated at a housing complex located] at 850 and 860 Bryant Avenue, Bronx, New York."  United States v. Carrillo, 229 F.3d 177, 179 (2d Cir. 2000).  The Bryant Boys were charged with violations of the Racketeer Influenced and Corrupt Organizations and Violent Crimes in Aid of Racketeering Act involving the Bryant Boys' "conspiracy to murder Rudolph Wyatt and attempted murder of Rudolph Wyatt, conspiracy to murder Kelvin Lyons and attempted murder of Kelvin Lyons, conspiracy to murder Joseph Hendrickson and murder of Rufus Brown . . . ,

conspiracy to murder Robert Antonetti and murder of Robert Antonetti, and conspiracy to murder Axel Antonetti and murder of Axel Antonetti." Id. at 178, 182.

Petitioner pled guilty to reduced charges of conspiracy to assault and assault with a dangerous weapon in exchange for having his original charges (that is, conspiracy to murder, murders, kidnapping, racketeering and firearm offenses) dismissed. See United States v. Mathies, Crim. Action No. 95-0942 (DAB) (S.D.N.Y.), Docket Entry No. 136. His initial judgment of conviction, entered on August 24, 1998, read as follows:

> [Petitioner is] committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of [t]hirty six months under [C]ount {O]ne and [t]wo [h]undred [f]orty [m]onths under [C]ount [T]wo. The terms of imprisonment imposed under [C]ounts [O]ne and [T]wo are to run consecutive to each other totaling two hundred seventy six months imprisonment.

Id.

On April 7, 1999, Petitioner's judgment of conviction was amended to add, at the end of the above-quoted paragraph, the following sentence:

> The imposed [s]entence is to run concurrent to the State Court Sentence pursuant to USSG Sec. 5G1.3.

Id., Docket Entry No. 189; accord Instant Matter, Docket Entry No. 1-1, at 2 (same).

In other words, Petitioner's federal court utilized its § 5G1.3 power to allow a downward departure of Petitioner's federal sentence in light of his then-running state sentence.

Describing the events relevant to that state sentence, Petitioner indicated that:

> on April 18, 1995, [that is, four years prior to the entry of his amended federal judgment, Petitioner] was arrested on drug charges and [upon being convicted of these state controlled substance offenses,] sentence[d] to [a term of imprisonment up] to six years [which he served in] a state prison.

Instant Matter, Docket Entry No. 1, at 8.

When Petitioner was paroled from his state prison term and entered federal custody, he challenged his federal sentence computation and was advised by the BOP officials as follows:

> A review of [Petitioner's record] reveal[ed that,] while [Petitioner was] in primary state custody [serving his sentence imposed on the basis of his drug] charges [that were prosecuted by] the [S]tate of New York, [Petitioner was] indicted by the federal government on [the above-described, murder, kidnapping and racketeering] charges.  [Initially, Petitioner was] sentenced on July 22, 1998, in the United States District Court, Southern New York, to a term of 276 months to run consecutive to [his] state sentence.  [Upon the entry of that sentence, Petitioner – who was then held in secondary federal custody under a writ of habeas corpus ad prosequendum – was] returned to state custody to complete [his] remaining state sentence [that was based on his controlled substance offenses.  When Petitioner was] paroled from [his] state sentence on February 11, 1999, [he entered into now-primary federal custody to serve his] federal sentence.  On April 07, 1999, an amended [j]udgment [of conviction was entered] by the federal sentencing court ordering [Petitioner's] federal sentence to run concurrent to the [now-expired] state sentence.  [His federal] sentence computation was [correspondingly] updated to

3

>reflect [the fact of his] federal sentence
>commenc[ement] on July 22, 1998, [that is, on] the date
>it was imposed, instead of the date [when he was]
>received into federal custody. [Petitioner was] also .
>. . awarded jail credit from April 18, 1995, the date
>[when he was] arrested on [his] state sentence to May
>18, 1995, the date prior to [that when his] state
>sentence [was] imposed [since that brief pre-state-
>sentencing period was not credited against Petitioner's
>state sentence].

Instant Matter, Docket Entry No. 1, at 22.

Petitioner, however, asserted that he "should [have also] receive[d] jail credit from November 1995 to November 1998," because he believed that his federal sentencing court directed such "jail credit."  Id.  Having his request denied in part by all three levels of the BOP, Petitioner commenced the matter at bar essentially maintaining the same.[1]  See generally, Docket Entry No. 1.

The record produced by Petitioner indicates that he and the BOP became substantially confused by each-other's submissions. See, generally, Docket Entry No. 1, at 16-30, and Docket Entry No. 1-1.  However, the record at bar indicates that Petitioner is not entitled to the "jail credit" he seeks.

---

[1] It is self-evident that Petitioner's request to have the period from July 22, 1998, to November 1998 "credited" against his federal sentence was granted by the BOP since the BOP recalculated his federal term as if it started on July 22, 1998. Hence, the period still remaining in dispute is that from November 1995 to July 21, 1998, i.e., the time from when Petitioner's state term was triggered and until the date when his federal sentence was imposed.

4

"The authority to calculate a federal prisoner's release date for the sentence imposed, and to provide credit for pre-sentence detention and good conduct, is delegated to the Attorney General, who acts through the [BOP]." Armstrong v. Grondolsky, 341 F. App'x 828, 830 (3d Cir. 2009) (citing United States v. Wilson, 503 U.S. 329, 334-35 (1992)). "In calculating the sentence, the BOP determines[:] (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled." Nieves v. Scism, 2013 U.S. App. LEXIS 10989, at *3 (3d Cir. 2013) (citing 18 U.S.C. § 3585). A sentence begins the date when a defendant "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); see also Howard v. Longley, 2013 U.S. App. LEXIS 17905, at *4 (3d Cir. Aug. 27, 2013) ("a sentence cannot start earlier than the day it was imposed . . . 'even if made concurrent with a sentence already being served'") (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). A federal sentence cannot begin to run when a defendant is placed in federal custody under an ad prosequendum writ, see generally, Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), since primary jurisdiction remains vested in the state because it is the sovereign that arrested the defendant first. Primary jurisdiction remains with the state until it

5

relinquishes its priority, which the state can do only by one of four ways: (a) bail release; (b) dismissal of all charges; (c) parole release; or (d) expiration of sentence.  See Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000), superseded on other grounds, as stated in, United States v. Saintville, 218 F.3d. 246, 248-49 (3d Cir. 2000); Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010) (same, relying on United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)); see also Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa. 1996) ("Primary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of [his] state obligation[s]"), aff'd, 100 F.3d 946 (3d Cir. 1996); accord Carmona v. Williamson, 2006 U.S. Dist. LEXIS 77201 (M.D. Pa. Oct. 23, 2006) (since the state holds primary jurisdiction over the defendant, the federal officials assume only secondary jurisdiction over him while he is serving his state sentence).

    Once the state's primary jurisdiction is relinquished, federal jurisdiction transforms from secondary to primary.  See Chambers, 920 F. Supp. at 622.  At that point, the BOP calculates an inmate's projected release date by factoring in the specifics of his federal sentence and all appropriate credits.  See Armstrong, 341 F. App'x at 830.  The key point of this calculation is the well-settled principle that a federal prisoner

cannot receive a so-called "double credit," that is, a credit for the time already credited against his state sentence.  See Wilson, 503 U.S. at 337 (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time").  That said, a federal prisoner is entitled to a so-called "prior custody credit" for the time he spent in detention before his federal sentence began, that is, if that period has not already been credited against his state sentence. See 18 U.S.C. § 3585(b) ("prior custody credit" is proper if the detention resulted either from the offense for which the sentence was imposed or from "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed [provided that such period] has not been credited against any other sentence"); compare Rios, 201 F.3d at 273 n.14 (even under § 3568, that is, the § 3585 predecessor which — unlike § 3568 — did not expressly preclude double credit, credit was still unavailable for the time credited against the defendant's state sentence, regardless of whether or not that detention came about because the defendant was denied bail in state forum on the basis of a federal detainer).

In addition, the BOP may take an administrative action creating a credit-like effect, even though that action is not a "credit" at all.  See, e.g., Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990); see also Galloway v. Warden of F.C.I., 2009 U.S.

Dist. LEXIS 9293, at *10-11 (D.N.J. Feb. 9, 2009) (detailing the Barden analysis), aff'd, 385 F. App'x 59 (3d Cir. 2010).

Moreover, a prisoner's federal term can be reduced not as a result of a credit or a credit-like action by the BOP but, rather, as a result of a downward departure granted by the prisoner's federal sentencing court.  With regard to *that* judicial decision, the BOP has no authority but to execute it faithfully.  Accord Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("3621(b) . . . does not confer [upon the BOP] authority to choose between concurrent and consecutive sentences").  Hence, if the federal court directs a prisoner's federal term to run in prospective concurrence with his undischarged (either already running or yet-to-be imposed) state sentence, or if the federal court orders retroactive concurrence to an already-running state term, the BOP can neither second-guess nor alter that judgment by granting the prisoner less downward departure or *more* downward departure.  See 18 U.S.C. § 3584(a); accord Setser, 132 S. Ct. at 1463; Ruggiano, 307 F.3d at 121.  This is so because the BOP cannot usurp

judicial powers of the prisoner's federal sentencing court.[2] See Setser v. United States, 132 S. Ct. at 1463.

The Court of Appeals' decision in Ruggiano is particularly instructive for the purposes of Petitioner's challenges at hand. The Ruggiano Court stated:

> The text of [S]ection 5G1.3 of the Guidelines consists of three subsections . . . :
>
> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
>
> (c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior

---

[2] If the sentencing federal court did not address the issue of concurrence expressly, the BOP is obligated to presume an implied consecutiveness, rather than concurrence, of the federal term. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"). In other words, the BOP is obligated not to presume any form of concurrence unless that concurrence is expressly directed by the sentencing court.

>     undischarged term of imprisonment to achieve
>     a reasonable punishment for the instant
>     offense.
>
> Subsection (a) of § 5G1.3 applies when the new offense
> was committed while the defendant was serving a term of
> imprisonment, and mandates that any new period of
> imprisonment be consecutive to the previous one.
> Subsection (b) applies *when the instant offense and the
> offense for which the undischarged term were imposed
> relate to the same crime*, and requires that the new
> sentence run "concurrently to the undischarged term of
> imprisonment."  Although it is not obvious from the
> text of subsection (b) that "concurrently" refers to
> time already served on the preexisting sentence,
> Application Note 2 in the Commentary to § 5G1.3(b)
> provides that the defendant should be credited for that
> time.  It states, "When a sentence is imposed pursuant
> to subsection (b), the court should adjust the sentence
> for any period of imprisonment already served as a
> result of the conduct taken into account in determining
> the guideline range for the instant offense."  U.S.S.G.
> § 5G1.3 cmt. n.2.  Note 2, therefore, makes clear that
> "concurrently" *in subsection (b)* means fully or
> *retroactively concurrently*, not simply concurrently
> with the remainder of the defendant's undischarged
> sentence.

Ruggiano, 307 F.3d at 127-28 (ellipsis omitted, emphasis supplied).

Here – while seeking a "jail credit" – Petitioner speculates that his amended federal judgment of conviction must have required *retroactive* concurrence with the state sentence simply because his federal sentencing court stated, "[t]he imposed [s]entence is to run concurrent to the State Court Sentence pursuant to USSG Sec. 5G1.3." Docket Entry No. 1-1, at 2.  In support, Petitioner produced a portion of his sentencing

transcript: "I am making sentence concurrent to the state court sentence pursuant to 5G1.3." Docket Entry No. 1, at 20.

However, not a single word in the amended judgment of conviction (or in the sentencing transcript, or even in the entire docket of United States v. Mathies, Crim. Action No. 95-0942 (DAB) (S.D.N.Y.)) suggests, even vaguely, that Petitioner's federal sentencing court directed *retroactive* – rather than prospective – concurrence.

Indeed, there is no word "retroactive" in the amended judgment. Analogously, there is no word "retroactively" in the sentencing transcript. And there is not a single reference in the entire record to subsection (b) of § 5G1.3 – or even to Note 2 of the comments to U.S.S.G. § 5G1.3. Moreover, there is no indication that such reference was ever intended.

Furthermore, and paramount here, it appears that there could *not* have been any such reference because, as the Ruggiano Court explained, resort to subsection (b) could be warranted if, and only if, both Petitioner's federal offense and his state offense for which the undischarged term was still running at the time of his federal "relate[d] to the *same crime*." Ruggiano, 307 F.3d at 128 (emphasis supplied).

Here, Petitioner's underlying federal charges were murder, racketeering, kidnapping and firearm offenses, and his federal conviction was imposed on the basis of his guilty plea to the

11

crimes of conspiracy to commit an assault and assault with a dangerous weapon.  In contrast, his state conviction was *not* imposed on the basis of any assault, murder, kidnapping or racketeering: it was imposed on the basis of Petitioner's controlled substance offenses.  Hence, it appears that the crimes underlying Petitioner's federal and state convictions were wholly distinct and different offenses, and *not* the same crime.  Therefore, his federal sentencing court would have had no valid basis for resorting to subsection (b) and for imposing a retroactively concurrent sentence.

In other words, while Petitioner's federal court could and did, indeed, utilize its power under § 5G1.3, it relied on the mandate supplied by § 5G1.3(c), that is, the provision allowing courts to impose a term running in *prospective* concurrence with what was remaining of Petitioner's undischarged state term as of the date of his federal sentencing.

Correspondingly, while the BOP's response to Petitioner's inquiry was stated in a bit convoluted terms, the outcome of the recalculation of Petitioner's federal term by the BOP was entirely correct.  Indeed: (a) the BOP had no mandate to second-guess the decision of Petitioner's federal sentencing court; and, dispositive here, (b) there was not a single word in Petitioner's amended judgment of conviction that could empower the BOP to calculate Petitioner's federal term as running in *retroactive*

12

concurrence with his state term.  See supra, this Opinion, note 2 (the BOP is obligated not to presume concurrence with regard to any sentence or even a portion of the sentence unless the federal sentencing court expressly directs such concurrence).

In light of the foregoing, Petitioner's challenges appear wholly meritless, even though his confusion about the issues at hand is indeed understandable.[3]  For these reasons, his Petition, Docket Entry No. 1, will be dismissed.  However, solely out of an abundance of caution, this Court will retain its jurisdiction over the instant matter for the period of ninety days so to allow Petitioner an opportunity to file a written statement detailing his facts, if any, which led him to believe that his federal sentencing court amended Petitioner's judgment of conviction by directing retroactive concurrence in accordance with § 5G1.3(b) rather than directing prospective concurrence in accordance with § 5G1.3(c), as it appears from the record at bar.[4]

An appropriate Order follows.

---

[3]   Petitioner's references to the period of his secondary federal custody, when he was in front of his federal sentencing court under under the writ of habeas corpus ad prosequendum, is of no relevance to the analysis at hand, since the period of that custody was duly credited against Petitioner's state sentence.

[4]   This Court stresses that Petitioner's self-serving preferences, hypothesis and legal speculations do not qualify as facts showing that his federal sentencing court directed retroactive concurrence under § 5G1.3(b).  Only the actual statements, oral or written, made by Petitioner's federal sentencing court could qualify as relevant facts.

S/sRenee Marie Bumb<br>
**RENÉE MARIE BUMB**<br>
**United States District Judge**

Dated: December 11, 2014